Filed 1/18/23  P. v. Wallace CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C092426 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F02739) |
| v. | OPINION ON TRANSFER |
| JILES LEE WALLACE, | |
| Defendant and Appellant. | |

In 1997, the trial court found defendant Jiles Lee Wallace guilty of first degree felony murder (Pen. Code, § 187, subd. (a))[1] with two special circumstance enhancements that the murder occurred during an attempted robbery and burglary (§ 190.2, subd. (a)(17)) for which defendant received a sentence of life without the

---

[1] Undesignated statutory references are to the Penal Code.

1

possibility of parole.[2]  We upheld this judgment in an unpublished decision issued December 21, 1998.  (*Wallace, supra*, C027310.)

Because of case developments associated with the sentencing of youthful offenders, defendant received a new sentencing hearing on January 27, 2016.  At the conclusion of that hearing, the trial court sentenced defendant, in pertinent part, to 25 years to life for the murder.

Thereafter, on February 13, 2019, defendant petitioned the trial court for resentencing based upon changes to the felony-murder rule under recently enacted Senate Bill No. 1437 (Reg. Sess. 2017-2018) (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019) (Senate Bill 1437).  Following the appointment of counsel and briefing, the trial court denied defendant's petition in a written order without a hearing.  While finding defendant had made a prima facie showing of eligibility for relief, the court found defendant was a "major participant" who had "acted with reckless indifference to human life."

On appeal, defendant originally contended the trial court erred in conflating the procedures associated with former section 1170.95 (now § 1172.6),[3] subdivisions (c) and (d), including engaging in impermissible factfinding.  He reasoned the trial court correctly determined he had made a prima facie showing entitling him to relief, but erred in determining he had acted with "reckless indifference to human life" precluding his eligibility for relief.  We issued an unpublished decision rejecting these contentions because, although the trial court might have erred in how it reached its decision denying

---

[2]  Defendant was also convicted of burglary, attempted robbery, and the trial court found true another sentencing enhancement that defendant had used a firearm in connection with the crime.  (*People v. Wallace* (Dec. 21, 1998, C027310) [nonpub. opn.] (*Wallace*).)  However, neither these convictions, nor defendant's sentence related to them, are relevant to this appeal.

[3] Effective June 30, 2022, long after defendant filed his petition, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  We will refer to the section where possible by its new numbering.

defendant's petition for resentencing, we concurred with the People that a review of defendant's record of conviction established as a matter of law that he was ineligible for resentencing.

Defendant appealed to the California Supreme Court, which directed this court to vacate its previous decision and reconsider the matter in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Having done so, we agree with the parties that the trial court's order must be vacated and the matter remanded for further proceedings consistent with this decision.

## I. BACKGROUND

### A. *The Underlying Conviction*

We take the facts from our 1998 unpublished opinion affirming defendant's convictions in *Wallace, supra*, C027310:

Around 3:00 a.m. on November 16, 1994, Scott Lewis was awakened by armed intruders in his apartment and shot to death by one of them. Lewis shared the apartment with his sister Kowana, her six-month-old child, and her boyfriend Billy Stack (who was not there at the time).

Less than a week before the shooting, Larry Freeman had accused Stack of stealing a stereo out of Freeman's car. Shortly thereafter Stack was shot in the leg by an acquaintance of Freeman's, while Freeman was present.

Albert Rhine, who earlier entered a negotiated guilty plea to voluntary manslaughter stemming from Lewis's death, testified about his involvement in the incident. Rhine stated that on the evening of the murder, he was with Freeman and Chris Dupree. Freeman had talked about Stack threatening Freeman's mother, in retaliation for being shot in the leg. Rhine, Freeman, and Dupree set out to pick up defendant at his apartment. On the way to defendant's apartment, Freeman stated he wanted Stack "taken care of"; Dupree replied that he would handle it.

3

At defendant's apartment, with Shawn Shorter present, Freeman told defendant that someone "was messing with his mom" and that he "wanted to go over and do something about it." Freeman and defendant went into a bedroom and returned with three handguns; the guns were inspected by all. Freeman also said that he had a safe stored at Stack's apartment, which contained drugs and maybe some money. If the others backed Freeman up, he said, they could have the contents of the safe.

Borrowing two cars (so Freeman's car could not be traced), the five men arrived at Stack and Lewis's apartment. Freeman stayed downstairs and instructed the others (defendant, Dupree, Rhine, and Shorter) to let Dupree handle things. While walking up to the apartment, defendant stated that if he was going in, he was going to get something out of it, like a TV or VCR. Defendant, Dupree, and Shorter were each armed with one of the handguns from defendant's apartment.

When the four men barged into the apartment, Lewis was on the couch. Defendant, with a mask over his head and the gun in his hand, told Lewis to get down and everything would be all right. Defendant and Rhine then went into Kowana's bedroom to look for the safe, while Shorter and Dupree, who had been behind defendant and Rhine, stayed with Lewis with guns drawn. While defendant and Rhine were "tearing the place up" looking for the safe in another bedroom, they heard three shots. All the intruders ran from the apartment; Lewis reached for Rhine, but defendant grabbed Rhine's shoulder and said let's go.

When they reached the cars, Freeman yelled at Dupree for shooting Lewis. Dupree later explained that was the way people did it in Louisiana.

An eyewitness saw the two borrowed cars at the scene, saw three black males and one white male go into Lewis's apartment complex, heard shots fired, and saw the four men return to the cars, one of whom was tentatively identified as defendant.

On January 28, 1997, the trial court determined defendant was guilty of first degree murder (§ 187, subd. (a)) and found true the enhancement allegations that

4

defendant had used a gun (§ 12022.5, subd. (a)) and that the murder was committed while engaged in burglary and attempted robbery (§ 190.2, subd. (a)(17)). The court also found defendant guilty of attempted robbery (§§ 664/211) and burglary (§ 459) and found true the allegations that he had used a gun during the commission of these crimes (§ 12022.5, subd. (a)). We affirmed this judgment on appeal. (*Wallace, supra*, C027310.) While defendant successfully petitioned for a new sentence that included the possibility of parole, the substance of his underlying convictions and related enhancements did not change.

## B.     *The Section 1172.6 Resentencing Proceedings*

On February 13, 2019, defendant filed a section 1172.6 petition for resentencing based upon changes to the felony-murder rule brought about by Senate Bill 1437 and requesting the appointment of counsel. This petition averred in pertinent part that defendant had been convicted of first degree murder under a felony-murder theory, but that he could not now be convicted of murder because of changes to sections 188 and 189. Pertinent to defendant's issues on appeal, the defendant also averred that he "was not a major participant in the felony or [that he] did not act with reckless indifference to human life during the course of the crime or felony." The court appointed counsel and briefing ensued. The People's opposition included in pertinent part that the true finding on the section 190.2, subdivision (a)(17) enhancements precluded defendant's ability to show that he was eligible for relief. In response, defendant argued the court should grant his petition given his youth at the time of the murder, the older age of his codefendants, and that other factors concerning his upbringing, etc., supported relief.

Thereafter, on May 1, 2020, the trial court denied defendant's petition in a written order without a hearing. While finding defendant had made a prima facie showing of eligibility for relief, the court found defendant was a "major participant" who had "acted with reckless indifference to human life." Instead of highlighting the true finding on the

5

enhancement allegations to make this determination, the court relied on information from defendant's record of conviction:

"1. The Defendant proceeded to trial, waiving his right to a jury trial. In sentencing the Defendant, the sentencing judge stated 'There was evidence provided that Mr. Wallace was actively involved in getting the weapon that was used in this and he was very active in the 211 against the -going into the apartment and trying to find the safe' (RT 3-5: 26-36:3)[;]

"2. The four males who entered the apartment did so to 'teach the male a lesson' (RT 36:4) as well as to commit a robbery[;]

"3. The Defendant was one of the first young males to enter the apartment while wearing a mask, pointed a gun at the victim and told him to get to the ground. (Dec 18, 2014 Probation report P.2)[;]

"4. The Trial Judge made a factual finding the Defendant 'was not what I would consider a passive participant [or] had a minor role in this, because of the fact that [he] was the one that was actively involved in helping get the weapon and the fact that he was very active in going into the apartment and setting the whole situation up that resulted in the killing' (RT []:10-16)."

The court's order continued: "Petitioner has requested this Court to take into consideration his youth and potential duress defense. Having done so, [t]his court still finds the Petitioner to have been a major participant who acted with reckless indifference to human life as defined in CALCRIM 703. [¶] It is ordered that Petitioner Jiles Lee Wallace's . . . Section 117[2.6] Petition for vacating of his first degree murder conviction in Case No. 95F02739 is Denied."

Defendant timely appealed.

6

## II. DISCUSSION

A. *Legal Background*

Senate Bill 1437, which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding former section 1170.95 (now 1172.6) to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Section 1172.6 allows "those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief." (*People v. Gentile* (2020) 10 Cal.5th 830, 843.) Section 1172.6, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960-962.) First, the trial court determines whether the petition is facially sufficient under

7

section 1172.6, subdivision (b).  (*Lewis, supra*, at p. 960.)  If the petition is facially sufficient, then, the trial court moves on to subdivision (c), appointing counsel (if requested) and following the briefing schedule set out in the statute.  (*Lewis, supra*, at p. 966.)  Following the completion of this briefing, the trial court then determines whether the petitioner has made a prima facie showing they are entitled to relief.  (*Ibid.*)

As our Supreme Court explained, "[w]hile the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 117[2.6] relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis, supra*, 11 Cal.5th at p. 971.)

As relevant here, Senate Bill No. 775 (2021-2022 Reg. Sess.), which took effect on January 1, 2022, amended section 1172.6 to codify the holdings of *Lewis* regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case, as well as to clarify the burden of proof at the resentencing hearing as proof beyond a reasonable doubt and address what evidence may be presented at the resentencing hearing.  (Cal. Const. art. IV, § 8; Stats. 2021, ch. 551, § 1.)

B.     *Application*

Here, the trial court determined defendant had stated a prima facie showing of eligibility but went on to find defendant was a "major participant" who had "acted with reckless indifference to human life."  Defendant originally argued this was impermissible

8

factfinding at a section 1172.6, subdivision (c) stage. Whether the trial court actually engaged in factfinding is ambiguous on this record. Nonetheless, we agreed with the People that the trial court's decision should be upheld because a review of defendant's record of conviction established as a matter of law that defendant was ineligible for resentencing. (See *People v. Smithey* (1999) 20 Cal.4th 936, 972 [" ' " '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion' " ' "].)

This was so because the trial court had determined defendant was guilty of first degree murder (§ 187, subd. (a)) and found true the enhancement allegations that the murder was committed while engaged in burglary and attempted robbery (§ 190.2, subd. (a)(17)). In order to find these enhancements true, the trial court necessarily determined that defendant was a major participant and that defendant acted with reckless indifference to human life. (CALCRIM No. 703.) Thus, we concluded the section 190.2 special circumstance findings rendered defendant ineligible for relief.

Following our unpublished decision in this case, the California Supreme Court issued *Strong*, which concluded: "Findings issued by a jury before [*People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522] do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437. This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*." (*Strong, supra*, 13 Cal.5th at p. 710.) Accordingly, the trial court's section 190.2, subdivision (a)(17) enhancement findings, which predated *Banks* and *Clark* (*Wallace, supra*, C027310), do not preclude defendant from making a prima facie case. We therefore conclude that we must vacate the trial court's order and remand for further proceedings consistent with this opinion.

9

## III.  DISPOSITION

The order denying defendant's section 1172.6 petition is vacated, and the matter is remanded with directions to conduct further proceedings consistent with this opinion.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

KRAUSE, J.